UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:12-cr-129 |
| | ) | |
| v. | ) | |
| | ) | *Mattice / Lee* |
| | ) | |
| RANDY GREENE | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is what has been construed as a motion to reconsider the report and recommendation issued by the undersigned [Doc. 281] with respect to the motion to suppress filed by Defendant Randy Greene ("Defendant") [Doc. 190] based on new evidence [Doc. 288]. Over the government's objection, and for the reasons set forth in my prior order, the Defendant's motion to introduce additional evidence in support of the motion to suppress was granted [Doc. 297]. Thereafter, the parties stipulated to the following two facts as true evidence concerning Defendant's motion to suppress:

> 1. The second of the three police encounters between Defendant and Deputy Payne occurred on May 4, 2012. This is one hundred and sixty (160) days prior to the October 12, 2012 arrest that is the subject of Defendant's motion to suppress.
>
> 2. During that traffic stop and arrest, Defendant's driver's license was checked and found to be suspended.

[Doc. 320].¹ These stipulated facts directly contradict the prior testimony of Deputy Drew Payne ("Payne"), which was relied upon in the original report and recommendation, concerning the lapse of time relevant to Payne's suspicion that Defendant was driving on a suspended license on October 12.

In summary, Defendant argues evidence resulting from the traffic stop should be suppressed because Payne lacked reasonable suspicion supported by specific and articulable facts to make the stop. As stated in more detail in the original report and recommendation, which will not be repeated herein, Payne stopped Defendant on the night at issue solely because Payne believed Defendant was driving without a valid driver's license based on his two prior evading arrest encounters with Defendant. However, during his testimony, Payne admitted he did not know whether Defendant had a valid driver's license after the first evading arrest encounter in 2010 or 2011 [Doc. 305 at Page ID # 772]. For inexplicable reasons, the government continues to claim Payne knew Defendant's license was suspended as a result of this first encounter [Doc. 334 at Page ID # 865 ¶ 1], even though Payne corrected his claim that he knew Defendant's license was suspended as a result of the first encounter on cross examination as specifically noted in the prior report and recommendation [Doc. 281 at Page ID # 628-29], which factual finding the government did not object to, but continues to ignore. Payne also admitted he did not know if Defendant got his license back [Doc. 305 at Page ID # 788].

As pertinent here, during the second of Payne's three encounters with Defendant, Defendant

---

¹ As the parties chose to proceed by way of stipulation, the scheduled hearing date with respect to the new evidence was cancelled and, pursuant to the parties' agreed schedule, Defendant filed a supplemental brief in support of his request for reconsideration based on the stipulated evidence [Doc. 330], and the government filed a supplemental response in opposition to the request [Doc. 334].

2

told Payne he fled because he did not have a driver's license and Payne confirmed Defendant's license was suspended. While Defendant was charged with evading arrest and driving on a suspended driver's license, Payne had no knowledge regarding the outcome of these charges. Payne initially said this second arrest of Defendant took place a "month or so" prior to the stop at issue, then agreed in cross examination that this arrest was about 72 days prior, in approximately July or August 2012. As now stipulated, this arrest actually took place 160 days prior on May 4, 2012. The crux of Defendant's argument is that this information is too stale to provide reasonable suspicion.

The parties also stipulated that during the May traffic stop, Defendant's driver's license was checked and found to be *suspended*. While the words "suspended" and "revoked" are often used interchangeably, they have different meanings under Tennessee law:

> "Revocation of driver license" means the termination by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the department after the expiration of at least one (1) year after date of revocation.
>
> "Suspension of driver license" means the temporary withdrawal by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which temporary withdrawal shall be for a period specifically designated by the department.

*State v. Goodson*, 77 S.W.3d 240, 245 (Tenn. Crim. App. 2001) (quoting Tenn. Code Ann. § 55-50-102(42), (47) (1998)). Payne did not testify regarding either his understanding of the actual terms of, or length of, the suspension of Defendant's license or his understanding of suspensions in general.

The government concedes Defendant was stopped solely because Payne thought Defendant

3

was driving on a suspended license. Defendant concedes the applicable standard in this case is one of reasonable suspicion, not probable cause. It is well-settled that reasonable suspicion exists where a law enforcement officer can articulate specific, particularized facts amounting to more than a hunch that criminal activity may be afoot when viewed in the totality of the circumstances. *See United States v. Young*, 707 F.3d 598, 604-05 (6th Cir. 2012).

As noted in the prior report and recommendation, in addressing reasonable suspicion, courts place significance on the amount of time that passes between events due to the issue of staleness, and evidence of the correct date of the prior arrest is important in the context of the pending motion to suppress. Although there is no specific formula for determining how much time must pass before certain information becomes stale, courts have upheld stops for driving without a valid license based on the officer's knowledge that the driver did not have a valid license 22 days before, *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004), and five months prior, *United States v. Pierre*, 484 F.3d 75, 83-84 (1st Cir. 2007). On the other hand, courts have also found licensing evidence stale when it was acquired 22 weeks before, *United States v. Laughrin*, 438 F.3d 1245, 1248 (10th Cir. 2006), and three years prior, *United States v. Bunton*, No. 2:09-CR-106, 2010 WL 2082642, at *3 (E.D. Tenn. May 24, 2010).

Payne had two prior encounters with Defendant, both of which involved a traffic stop that ended in Defendant's arrest after he fled and wrecked his automobile. The second arrest occurred *not* some 30 or even 72 days prior to the stop at issue as sworn by Payne, but 160 days prior. While this is the only difference between the factual findings from the first report and recommendation to this one, it is a significant factual difference and merits a new recommendation. It is not necessary to further repeat the legal discussion and conclusions contained in the original report and

4

recommendation as the parties have presented no new cases for consideration. As previously noted, *Pierre* and *Laughrin* address an almost identical period of time, 152 days and 154 days, respectively; yet, the two cases reach different conclusions regarding staleness. As it turns out based on the new evidence, the window of time at issue in the instant matter is slightly greater than in either case.

Payne's information about the suspension of Defendant's license was acquired first-hand, and it was the second time Defendant's attempt to evade arrest ended in a crash, arguably making Payne's encounters with Defendant memorable even though, as it turns out, Payne had no credible recall of the date of the prior encounter.[2] While I continue to find Payne remembered in October that Defendant's license was suspended at the time of their prior encounter, he clearly did not remember how long it had been since he last encountered and arrested Defendant. Absolutely no evidence was offered concerning what a reasonable officer would know about license suspensions in general. Payne admitted he did not know anything about the actual length of the suspension of Defendant's license in particular [Doc. 305 at Page ID # 775-76]. It is undisputed that Payne took no steps to confirm or dispel his belief that Defendant's license remained suspended *prior* to stopping Defendant.

Reasonable suspicion exists where the specific and articulated facts amount to more than a hunch that criminal activity may be afoot when viewed in the totality of the circumstances. *See Young*, 707 F.3d at 604-05. While there is no rigid mathematical formula or bright line rule applicable to the staleness inquiry and staleness is not determined solely by age, the lapse of time is a factor. After considering the totality of the proven circumstances, and noting that "suspension"

---

[2] Neither party sought a hearing in light of the stipulation nor requested an opportunity to question Payne about his inaccurate testimony during the suppression hearing.

5

of a license means the *temporary* withdrawal of the driver's privilege to operate a motor vehicle, I **CONCLUDE** the government has not met its burden of proof to show Payne had a reasonable, articulable suspicion that criminal activity was afoot in October because Defendant was driving on a suspended license in May.[3]

For the reasons stated above, I **RECOMMEND** that Defendant's motion to suppress evidence resulting form the traffic stop [Doc. 190] be **GRANTED**.[4]

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] In a footnote [Doc. 334 at Page ID # 866], the government claims that should the Court find Payne did not have reasonable suspicion to stop Defendant, suppression is not the appropriate remedy pursuant to *Herring v. United States*, 555 U.S. 135 (2009) (police conduct must be sufficiently deliberate such that exclusion could meaningfully deter it and sufficiently culpable that such deterrence is worth the price paid by the justice system). First, the government's passing reference to a case in a footnote is insufficient to preserve the argument. "The case precedent in this circuit instructs courts to withhold judgment on issues not fully developed by the briefs or in the record . . . Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 823 (6th Cir. 2002) (internal quotations and citation omitted). Second, it appears Payne's conduct was sufficiently deliberate that exclusion could deter it and sufficiently culpable that such deterrence may be worth the price paid.

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).